## MOYER et al. v. ÆTNA LIFE INS. CO.
### No. 3403.

District Court, M. D. Pennsylvania.
June 30, 1941.

J. P. Carpenter and Alvin W. Carpenter (of Carpenter & Carpenter), both of Sunbury, Pa., for plaintiffs.

Walter Hill, Sr., and Edward W. Warren, (of O'Malley, Hill, Harris & Harris), both of Scranton, Pa., for defendant.

JOHNSON, District Judge.

This is an action of assumpsit on two life insurance policies issued by defendant on the life of Charles Moyer, deceased husband of plaintiff, to recover the sum of $35,675.03 for death and disability benefits and interest. In June, 1938, the case was tried before the court and a jury, and a verdict rendered for plaintiff for $2,691. This verdict was set aside because inconsistent with special findings made by the jury, and a new trial awarded on plaintiff's motion.

At the same time, the court dismissed defendant's motion to enter judgment in its favor upon the whole record. Defendant appealed the dismissal of its motion, and the Circuit Court of Appeals for the Third Circuit affirmed the order dismissing the motion for judgment: Aetna Life Ins. Co. v. Moyer, 113 F.2d 974.

In January, 1941, the case was tried again before the court and a jury and a verdict rendered for plaintiff for $35,675.03, the full amount of plaintiff's claim. Defendant, pursuant to its motion at trial for a directed verdict, now moves the court to set aside the verdict and enter judgment for the defendant, or if this be refused, to grant a new trial.

I. Motion to Set Aside Verdict and Enter Judgment for the Defendant.

In the brief of counsel for defendant the grounds for this motion are summarized under four points, which will be considered in order as presented.

First, defendant contends that there was no compliance with the conditions precedent to the accrual of disability benefits that satisfactory evidence of total and permanent disability be received at the home office. The testimony on evidence being presented to the company was substantially the same as that offered at the first trial. So far as the company's knowledge of the insured's disability is concerned, evidence thereof is the policy's requirement, not formal proof, and the evidence can be oral or written, and knowledge of the insured's disability, gained by defendant's agent in his official capacity, supplied the policies requirement of evidence. Testimony in the case would fully support findings that the insured became totally and permanently disabled from bodily disease in the fall of 1927 and that the company's accredited representative had due knowledge thereof. Therefore, the question of the defendant's knowledge of insured's disability, through its representative Bichner, was for the jury to determine: Aetna Life Insurance Co. v. Moyer, 3 Cir., 113 F.2d 974, 978-981.

Secondly, defendant argues that the insured assented to a due determination of no disability because of his statements in a letter, application for reinstatement of policy, and medical examiners report on the application, early in 1930. The medical examiner's report was prepared by defendant's medical examiner who stated he had never known the insured before examination in 1930. At most, the letter, application for insurance and medical report constituted no more than a matter for the jury's consideration as possible impeachment of the insured's alleged total and permanent disability prior to and at the time of signing the later application. Nothing ever came of that application and no contract right is founded upon it. As might have been expected in view of the testimony in this case with respect to insured's bad physical condition, his reapplication was promptly rejected by defendant. The testimony indicates that the insured's signing of the application for new insurance was done at the instance of an agent of defendant company: Aetna Life

728

Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, 982.

■ Thirdly, defendant contends that the evidence received by its agent, Bichner, in 1927 was withdrawn in 1930 and thereafter no evidence of disability was received. This is simply a restatement of the second reason discussed above, and again, it was at most for the jury to determine whether under all the evidence in the case, the evidence of disability was ever withdrawn: Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, 982.

Fourthly, defendant argues that plaintiff is precluded from arguing that the policies lapsed by signing the application for reinstatement. As noted above, the reapplication was signed at the instance of defendant's agent, and, at most, it constituted a matter for the jury's consideration together with all the other evidence in the case: Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, 982.

For the above reasons, the motion to set aside the verdict and enter judgment for the defendant must be denied.

## II. Motion for a New Trial.

Defendant's first ground for a new trial is stated in general terms and not separately argued: Defendant's Brief, page 1. Reasons 2 to 4, that the verdict is against the law, the evidence, and the weight of the evidence, have been discussed and decided above in considering the motion to enter judgment for the defendant.

■ Reasons 5 to 9 complain of the court's ruling on certain testimony of Mrs. Moyer. Based on facts presented, Mrs. Moyer was competent to testify whether insured was able to attend to his business. In so doing, she was speaking from personal, daily observation, and not voicing an opinion on the ultimate fact in issue: See Trial Record, pages 29, 30. She did not testify that her husband had diabetes. She testified he complained of that disease and bad eyesight. This is not proof of that disease, but was proper to be considered by the jury along with all the other evidence in the case: Trial Record, page 32. She was also competent to testify what she observed about his thinking, as explained by the court: Trial Record, pages 35, 36. The effect of her statements in the proofs of death filed with the company was a matter for the jury to consider in connection with her credibility. She was competent to testify from personal knowledge that her husband had been the owner of a certain business establishment. That was the question; not whether that establishment sold "near beer": See Trial Record, page 41.

■ Reason 10 objects to the court's action in limiting the cross-examination by defendant of Dr. Ervin, when called as a witness for plaintiff. The only matter excluded by the court was testimony concerning insured's ability to work and run a restaurant, because that was not touched in direct examination, and was a matter of defense. The defendant had also subponaed Dr. Ervin and later called him. The reasons for the court's action are clearly set forth in the record: Trial Record, pages 80–85.

■ Reason 11 complains that the court allowed plaintiff to withdraw its exhibit No. 8 after it had been offered in evidence. It had not been transcribed or its contents made known to the jury. The withdrawal of it was within the court's discretion: See, Henry, Pennsylvania Trial Evidence, pages 471, 472, and cases there cited. There can be no charge of supression of evidence, as defendant ultimately offered the same paper as its Exhibit #13.

■ Reasons 12 to 16 complain of rulings on the testimony of one Bichner, defendant's agent. Bichner was competent to testify concerning his own authority: Pa.Annot.Restatement of Agency, sec. 285 (a) and cases there cited. His testimony concerning his inquiry in the community about insured's health was competent, not as evidence of insured's condition, but as evidence that he did make an investigation, and as evidence that the company defendant did have knowledge of insured's condition through its agent. It was competent to be considered by the jury along with all the other evidence in the case: See Trial Record, pages 135-136. It was not error to allow Bichner to testify that insured's physical condition was "bad", because he immediately explained factually what he meant by that word: Trial Record, pages 140, 141.

■ Reasons 17 and 18 complain of rulings on testimony of plaintiff's witnesses, Ross and Boback. It was not error to allow Ross to state insured was sick, as explained by the court: Trial Record, pages 155, 156. This witness testified from his own knowledge. It was not error to allow Boback's statement to stand that in-

sured looked like a "fellow that has loco-motor ataxia". He promptly explained what he meant, dragging feet, and this is a condition recognizable by a layman: See Trial Record, pages 170, 171.

Reasons 19 and 20 complain of rulings on testimony of Dr. Boush, plaintiff's witness. The witness's opinion of insured's physical condition was based on facts supported by evidence. The facts were stated sufficiently and relied upon, and the opinion assumed the truth of the facts: See Trial Record, pages 196–198; also pages 30–32.

Reasons 21 to 31 complain of rulings on a hypothetical question asked Dr. Deitrick, plaintiff's witness. Under the circumstances the question was not too long and complicated, nor confused. The question assumed all material facts brought out by plaintiff's witnesses, and there was evidence to support all the facts stated to the doctor. The questions asked Dr. Deitrick were proper under the Pennsylvania rules on hypothetical questions: Henry, Pennsylvania Trial Evidence, page 365 and cases there cited.

Reason 32 complains of the court's action in refusing defendant's offer to produce an old criminal record against insured, "for the purpose of attacking the credibility of the plaintiff". The offer was refused because it was an attempt to contradict upon an immaterial point and further because the court did not feel it contradicted the plaintiff: Trial Record, page 243. No case has been cited to this court even suggesting that there was error in this ruling.

Reasons 33 to 36, 39 and 41 complain of the court's charge to the jury. The court did not charge the jury that insured would be entitled to disability benefits whether or not evidence was received by defendant company. The charge was that the right to disability benefits attached upon the existence of disability in fact, and benefits accrue upon receipt of evidence by the company that disability exists: See, Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, 979, and the charge of this court, Trial Record, pages 247–299. The court did not err in defining total and permanent disability. Total disability does not mean helplessness or complete disability. It means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of per-

forming: Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, 980, and the jury was so charged: Trial Record, pages 251–253, et seq. The court committed no reversible error in using the word "notice" instead of "evidence". The error was corrected and the meaning of "evidence" was carefully explained to the jury in line with the opinion of the Circuit Court of Appeals: Trial Record, pages 253, 254, 265, 298; Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974. The court did not err in its explanation of Bichner's duties and authority. His authority and his duties as an agent of the defendant were properly covered in the general charge and were in line with the opinion of the Circuit Court of Appeals: Trial Record, pages 247-299; Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974. Nor did the court err in giving the jury a proper measure to determine the relative weight of oral and documentary evidence. This matter was covered in the charge of the court concerning credibility of witnesses, and again at the request of defendant's counsel: Trial Record, pages 284, 285. Counsel for defendant then requested no further explanation.

Reasons 37 and 40 complain of the court's affirmance or refusal of certain points for charge. The complete answer to a complaint of error in refusing to affirm defendant's 10th point was given by the court at that time: Trial Record, page 272. It was for the jury to determine what Bichner had learned concerning the insured's physical condition and whether he learned anything additional in the community. Reason 40 complains of the court's affirmance of plaintiff's points 1 to 18, and of the comments thereon; of the affirmance with qualifications of defendant's points 2, 4–9, 11–14, 17–19, 22, 24, 28, and of the comments thereon; of the refusal to affirm defendant's points 10, 15, 16, 27, 29, and of the comments thereon; and of the court's refusal to grant defendant's motion for binding instructions. This constitutes a blanket charge, the answer to which is that all of the rulings involved were full and fair under the evidence and the law applicable and in line with the opinion of the Circuit Court of Appeals: See Trial Record; Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974.

Reason 38 complains that the court refused to submit to the jury three special questions submitted by defendant. They were refused because they might be con-

fusing, and because they were all covered in the general charge of the court; under the circumstances the court felt it would be wiser not to submit the questions to the jury: Trial Record, page 278. In the Federal courts, the submission of special questions is entirely within the discretion of the trial judge: Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c; 3 Moore's Federal Practice, page 3096, note, and 3100 and note.

Reasons 42 to 44 relate to portions of the charge of the court. They have not been argued, and there is no merit in them. The matters complained of were covered carefully and sufficiently in the charge of the court. For the above reasons a new trial should be refused.

And now defendant's motions to set aside the verdict and enter judgment for the defendant, and to grant a new trial, are refused and dismissed, and the Clerk is ordered to enter judgment on the verdict.